## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

| | |
|---|---|
| **JOAN DeMARTIN**<br>101 West Starr Ave., Apt. B<br>Columbus, OH 43201<br><br>Plaintiff,<br><br>vs<br><br>**NATIONSTAR MORTGAGE LLC d.b.a.**<br>**MR. COOPER**<br>c/o Corporation Service Company<br>50 West Broad St., Suite 1330<br>Columbus, OH 43215<br><br>and<br><br>**FEDERAL NATIONAL MORTGAGE**<br>**ASSOCIATION**<br>1100 15th Street NW<br>Washington, DC 20005<br><br>Defendant. | Case No.<br><br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Joan DeMartin, through counsel, states as follows for her Complaint against Defendants Nationstar Mortgage LLC d.b.a. Mr. Cooper and Federal National Mortgage Association:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Joan DeMartin ("Plaintiff" or "DeMartin") was the owner of residential real property, located at and commonly known as 834 South Lazelle St., Columbus, OH 43206 (the "Home"), which she occupied as her primary, principal residence for all times relevant to this Complaint until the sale of the Home.

2.      Defendant Nationstar Mortgage LLC, d.b.a. Mr. Cooper ("Nationstar") was the servicer of a note executed by DeMartin (the "Note") and of a mortgage on the Home that secured

said note (the "Mortgage") (collectively, the "Loan") at all times relevant to this Complaint until the sale of the Home. *See*, a copy of the Loan, attached as **Exhibit 1**.

3. Defendant Federal National Mortgage Association ("FNMA" or "Fannie Mae") was the current owner of the Loan at all times relevant to the allegations in this Complaint until the sale of the Home.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the Truth in Lending Act, 12 U.S.C. §§ 1601, *et seq*. ("TILA"), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. ("RESPA").

5. This Court has supplemental jurisdiction to hear any state law statutory and common law claims pleaded, *infra*, or that otherwise may arise pursuant to 28 U.S.C. § 1367.

6. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

7. This action is filed to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X") and 12 C.F.R. § 1026.1, *et seq.* ("Regulation Z"), as well as to seek recovery for state law claims under the Residential Mortgage Lending Act, R.C. 1322.01, *et seq.* (RMLA).

8. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

9. Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14,

2013) and the Mortgage servicing Rules Under the Truth in Lending Act, 78 F.R. 10901 (February 14, 2013) (Regulation Z), which became effective on January 10, 2014.

10.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties[1]." 12 U.S.C. § 2605(k)(1)(C).

11.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

12.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

13.     DeMartin asserts claims for relief against Nationstar for violations of the specific rules under Regulation X, as set forth, *infra*.

14.     DeMartin has a private right action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

---

[1] "The Bureau believes that standard servicer duties are those typically undertaken by servicers in the ordinary course of business. Such duties include not only the obligations that are specifically identified in section 6(k)(1)(C) of RESPA, but also those duties that are defined as ''servicing'' by RESPA, as implemented by this rule, as well as duties customarily undertaken by servicers to investors and consumers in connection with the servicing of a mortgage loan. These standard servicer duties are not limited to duties that constitute ''servicing,'' as defined in this rule, and include, for example, duties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, to respond to borrowers regarding mortgage loan problems, to report data on loan performance to investors and guarantors, and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans." 78 Fed. Reg. 10696, 10739.

15.     TILA provides that a creditor or servicer of a home loan shall provide an *accurate* payoff balance within a reasonable period, but within seven (7) business days regardless of circumstances, upon receipt of a written request from a borrower for the same. 15 U.S.C. § 1639g.

16.     Through Regulation Z, the CFPB has provided guidance for the interpretation of certain TILA provisions, including servicers' duties related to responding to requests for a payoff balance.

17. Regarding payoff statements, Regulation Z provides that:

> In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer. When a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure, because the loan is a reverse mortgage or shared appreciation mortgage, or because of natural disasters or other similar circumstances, the payoff statement must be provided within a reasonable time.

12 C.F.R. § 1026.36(c)(3).

18.     The Loan is a closed-end consumer credit transaction secured by their respective dwellings as contemplated by TILA and Regulation Z. 15 U.S.C. § 1602; 15 U.S.C. § 1639g; 12 C.F.R. § 1026.36(b).

19.     FNMA is an assignee of the Loan as defined and contemplated by TILA and Regulation Z.

20.     Courts in this Circuit have held that creditors and their assignees can be held vicariously liable for servicers' TILA violations. *Kolano v. Bank of Am.*, 2014 WL 1117862, at *6 (N.D. Ohio 2014) (citing, *inter alia*, *Kissinger v. Wells Fargo Bank, N.A.*, 888 F.Supp.2d 1309,

1315 (S.D. Fla. 2012)); *Justice v. Ocwen Loan Servicing*, 2015 WL 235738, at *13, n. 9 (S.D. Ohio 2015) (citing *Kolano*, 2014 WL 1117862 at *6).[2]

21.     DeMartin asserts claims for relief against FNMA for violations of the specific rules under Regulation Z, as set forth, *infra*.

22.     DeMartin has a private right action under TILA pursuant to 15 U.S.C. § 1641(e) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

23.     Nationstar is subject to the requirements of the RMLA, and does not qualify for the exemptions listed in R.C. 1322.04.

---

[2] Some courts in other Circuits have ruled that an assignee cannot be held vicariously liable for a servicer's failure to provide a payoff statement (as contemplated by 15 U.S.C. § 1639g) because (1) 15 U.S.C. § 1641(a)—which governs the liability of creditors' assignees under TILA—limits assignees' liability to circumstances where a TILA violation is "apparent on the face of [a] disclosure statement," and (2) the term "disclosure statement"—although not defined by TILA—refers to disclosures made *before* a loan is executed, such that a payoff statement—which is necessarily provided *after* a loan has been made and assigned to a new creditor—can never constitute a "disclosure statement." *See, e.g.*, *Evanto v. Fed. Nat. Mortg. Ass'n*, 814 F.3d 1295, 1297 (11th Cir. 2016). However, other courts, including the Sixth Circuit, have rejected this limitation upon assignee liability under TILA. *Marais*, 736 F.3d at 718, n. 4 (citing *Cenat v. U.S. Bank, N.A.*, 930 F.Supp.2d 1347, 1354 (S.D. Fla. 2013) (collecting cases)). This is because 15 U.S.C. § 1641(g)(1) requires "the creditor that is the new owner or assignee of the debt" to "notify the borrower in writing of such transfer," and refers to this requirement as being "in addition to other *disclosures* required by this subchapter." (emphasis added). In other words, because TILA describes the required notification that a loan has been assigned to a new creditor as a "disclosure," and because that notification necessarily would occur after the inception and assignment of a loan, "the term 'disclosure statement' can be construed to encompass postassignment disclosures." *Marais*, 736 F.3d at 718, n. 4 (citing *Cenat*, 930 F.Supp.2d at 1354). Since a payoff statement (as contemplated by 15 U.S.C. § 1639g) is another "*disclosure[]* required by" TILA (15 U.S.C. § 1641(g)(1) (emphasis added)), the failure to provide such a payoff statement is a type of "postassignment disclosure" upon which vicarious TILA liability can be premised, even against an assignee. *See*, *Marais*, 736 F.3d at 718, n. 4; *Cenat*, 930 F.Supp.2d at 1354. This interpretation would be consistent with TILA's purpose as a remedial statute, and the stated intention of courts within this Circuit to avoid rendering the provisions of TILA "meaningless." *E.g.*, *Kolano*, 2014 WL 1117862 at *5-6; *Justice* 2015 WL 235738 at *13-15.

24.     Nationstar is a mortgage servicer under the RMLA as it "holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement." R.C. 1322.01(AA).

## FACTUAL BACKGROUND

25.     DeMartin encountered financial difficulties and fell behind on her obligations under the Loan.

26.     On or about September 20, 2017, FNMA initiated foreclosure proceedings against DeMartin in the Court of Common Pleas for Franklin County, Ohio, in the matter assigned Case No. 17-CV-008487 (the "Foreclosure").

27.     The Court issued judgment in favor of FNMA in the Foreclosure on or about February 23, 2018.

28.     DeMartin subsequently appealed the judgment to the Court of Appeals for the Tenth Appellate District of Ohio in the matter assigned Case No. 18-AP-000221, and the Court affirmed the judgment on or about May 31, 2019.

29.     DeMartin sought to appeal the judgment to the Ohio Supreme Court, but the Court declined to exercise jurisdiction over the same.

30.     Seeking to avoid a foreclosure sale of the Home, DeMartin employed the services of a real estate agent and sought to sell the Home to satisfy the outstanding obligations due on the Loan or to otherwise seek a short sale of the Home.

31.     In order to facilitate the sale of the Home and the closing of said sale, on at least three (3) separate occasions, DeMartin requested a payoff statement for the Loan from Nationstar.

32.     Nationstar provided responsive payoff statements to DeMartin on at least two (2) separate instances:

a.   A payoff statement dated July 9, 2020 which contained a demand for "Lender Paid Expenses" in the amount of $3,950.80 and "Legal Fees" in the amount of $1,874.60 ("Payoff #1");

b.   A payoff statement dated July 24, 2020 which contained a demand for "Lender Paid Expenses" in the amount of $4,221.80 and "Legal Fees" in the amount of $1,874.60 ("Payoff #2"); and,

c.   A payoff statement dated September 8, 2020 which contained a demand for "Lender Paid Expenses" in the amount of $4,223.80 and "Legal Fees" in the amount of $1,874.60 ("Payoff #3").

*See*, copies of Payoff #1, Payoff #2, and Payoff #3 (collectively, the "Payoffs") attached as **Exhibit 2**, **Exhibit 3**, and **Exhibit 4**, respectively.

33.   DeMartin sought clarification as to the claimed amounts due for the "Legal Fees" and "Lender Paid Expenses" outlined in Payoffs from Nationstar to which Nationstar responded through correspondence dated July 28, 2020 stating:

> As of the date of this letter, the lender paid expense balance is $27,211,80 and includes foreclosure fees and costs from the foreclosure referrals in July 2016 and September 2017; the deferred principal balance from the loan modification completed and effective March 1, 2017; and property inspections ordered due to the delinquency of the loan. Please find a breakdown of the lender paid expense balance enclosed for your review.
>
> The legal fees of $1,461.50 are posting costs, which are part of the foreclosure fees and costs, that transferred with the loan from Seterus.
>
> The legal fees of $1,874.60 reflected on the enclosed payoff quote reflect estimated fees and costs that will become due after the date of the payoff quote due to the foreclosure status of the loan. Please review the highlighted portion of the enclosed payoff quote for additional information.

*See*, a copy of this correspondence, attached as **Exhibit 5**.

34.     A transaction history enclosed with the July 28, 2020 correspondence, however, contained a significant number of entries that establish attorneys' fees as part of the recoverable corporate balance that are believed to comprise a significant portion of the "Lender Paid Expenses" and "Legal Fees" demanded through the Payoffs, including the following entries:

    a.     6/4/2018 483.00 LEGALPOSTINGCOST ATTORNEY FEES

    b.     5/2/2018 618.00 LEGALPOSTINGCOST ATTORNEY FEES

    c.     10/24/2017 165.00 PUBICATN NOTICE ATTORNEY FEES

    d.     10/6/2017 360.50 LEGALPOSTINGCOST ATTORNEY FEES

    e.     9/25/2017 1,295.00 TITLESERVCATTNY ATTORNEY FEES

    f.     5/11/2016 10.00 ATTORNEY FEES

    g.     1/28/2016 10.00 ATTORNEY FEES

    h.     1/28/2016 675.00 ATTORNEY FEES

*See*, Exhibit 5.

35.     Despite DeMartin's best efforts, the only offer she was able to receive for her Home was in the amount of $439,900.00, scheduled to close September 14, 2020, but permitting DeMartin to lease the premises from the purchasers at no cost for two (2) months following the closing—a significant value to DeMartin as it permitted needed time to find a new home and to pack and move her belongings.

36.     Plaintiff made numerous attempts to Nationstar and FNMA, through their counsel Reimer Law, to have the payoff amount reduced from approximately $421,527.74 to $410,928.13, which was calculated as the payoff amount necessary to have a "break-even" closing, with no additional funds payable or disbursable through the closing, but to no avail.

37.     As discussed, *supra*, a significant portion of the roughly Ten Thousand Four Hundred Dollars ($10,400.00) that separated the payoff amount claimed from the "break-even" payoff amount consisted of transactions identified as "Attorney Fees" in Nationstar's prior correspondence. *See*, Exhibit 5.

38.     The refusal of FNMA and Nationstar to remove the "Attorney Fees" from the Payoff amount necessitated the parties to the sale of the Home to bring over Four Thousand Dollaars ($4,000.00)[3] to the table at closing in order to satisfy the payoff amount claimed due and owing for the Loan.

39.     As DeMartin was without the necessary funds to bring to table in order to fully pay off the Loan at closing, in order to satisfy such amounts, DeMartin had no option but to relinquish her valuable benefit of living in the Home at no cost for two (2) months post-closing and instead vacate the Home on or before September 27, 2020.

40.     The sale of the Home closed on or about September 17, 2020 and the Loan was paid in full.

41.     FNMA moved to vacate the judgment in the Foreclosure on or about September 22, 2020 and the Court vacated the judgment on or about September 24, 2020.

42.     The Note provides at § 6(E) that: "If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees." *See*, Exhibit 1.

---

[3] The amount to "break-even" for the Loan was reduced from the approximate amount of Ten Thousand Dollars ($10,000.00) through the voluntary, extraordinary willingness of the real estate agents to the transaction being willing to reduce their commission for the sale of the Home.

43. Well-settled Ohio law prohibits the recovery of attorneys' fees pursuant to provisions such as that in the Note, *supra*. *See*, *inter alia*, *Kline v. Mortg. Elec. Sec. Sys.*, No. 3:08cv408, 2013 U.S. Dist. LEXIS 133765 (S.D. Ohio Sep. 18, 2013)[4]; *State v. Taylor*, 10 Ohio 378 (1841); *Leavans v. Ohio Nat'l Bank*, 34 N.E. 1089 (1893); *Miller v. Kyle*, 97 N.E. 372 (Ohio 1911); *Wilborn v. Bank One Corp.*, 906 N.E.2d 396 (Ohio 2009); *Worth v. Aetna Cas. & Sur. Co.*, 513 N.E. 2d 253 (1987).

### DeMARTIN'S ATTEMPTS TO AMICABLY RESOLVE THIS MATTER PRIOR TO FILING THE INSTANT MATTER

44. Wronged by the actions of FNMA and Nationstar, DeMartin retained counsel to attempt to have FNMA and Nationstar correct their erroneous actions.

45. On or about October 5, 2020, DeMartin, through counsel, sent a notice of error captioned "Notice of errors pursuant to 12 C.F.R. § 1024.35(b)(6) and 12 U.S.C. § 2605(k)(1)(C) for failing to provide accurate payoff statements in response to a borrower's requests pursuant to 12 C.F.R. § 1026.36(c)(3) in a timely manner" (the "NOE") via Certified Mail [Tracking No. 70142120000306730334] to Nationstar at the address designated for borrowers to send notices of

---

[4] "The concern of *Taylor, Miller*, and their progeny has been that the stipulation to pay attorney fees operates as a penalty to the defaulting party and encourages litigation to establish either a breach of the agreement or a default on the obligation. *Wilborn*, 906 N.E.2d at 401 (quoting *Worth*, 513 N.E.2d at 258). Here, too, the provision to pay LS&R's attorney fees is in the sole interest of the creditor, with no reciprocal benefit to Kline akin to reinstatement. *Worth*, 513 N.E.2d at 257. As the *Wilborn* court observed, the debtor is not voluntarily exercising a contractual right prior to judgment in exchange for the surrender of some other right by the lender by paying its attorneys' fees when they are included with a payoff, 906 N.E.2d at 408. Kline paid off a debt that he owed anyway, but with the inclusion of attorneys' fees that he would not have had to pay, but for his default. This is precisely the situation that invokes the policy justifications for the rule as stated in the Ohio Supreme Court's original *Taylor* opinion, which warned that it would be the condition of future loans, at banks, that the borrower should pay the expenses of collection, and that "in proportion to the borrower's necessity they would find, probably, additional items of costs, as the means of a legalized extortion upon their loans. 10 Ohio 378, 381. Based on the foregoing, the Court finds no reason to extend Ohio law, as LS&R requests, by recognizing an additional exception to its prohibition on attorney fees in mortgage agreements." *Kline*, 2013 U.S. Dist. LEXIS 133765, at *28-29 (internal quotations omitted).

error pursuant to 12 C.F.R. § 1024.35 and requests for information pursuant to 12 C.F.R. § 1024.36 (the "Designated Address"). *See*, a copy of the NOE with tracking information from the website for the United States Postal Service (www.usps.com), attached as **Exhibit 6**.

46.     Through the NOE, DeMartin alleged that Nationstar failed to provide accurate payoff statements in violation of 12 C.F.R. § 1026.36(c)(3), which is a covered error under 12 C.F.R. § 1024.35(b)(6), on at least two (2) separate occasions through the issuance of each of the Payoffs. *See,* id.

47.     Nationstar received the NOE at the Designated Address on or before October 12, 2020. *See,* id.

48.     On or about October 13, 2020, DeMartin's counsel received correspondence from Nationstar acknowledging receipt of the NOE and stating that Nationstar would respond no later than November 16, 2020 (the "Acknowledgment")—despite 12 C.F.R. § 1024.35(e)(3)(i)(A) mandating servicers respond to error alleged pursuant to 12 C.F.R. § 1024.35(b)(6) within seven (7) business days. *See*, a copy of the Acknowledgment, attached as **Exhibit 7**.

49.     To date, Nationstar has not sent and neither DeMartin or her counsel have received any further communications from Nationstar concerning the NOE, including a substantive response to the same.

50.     On or about December 4, 2020, DeMartin, through counsel, sent a notice of error captioned "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to properly respond to a notice of error as required by 12 C.F.R. § 1024.35 and 12 U.S.C. § 2605(k)(1)(C) and (E)" (the "Subsequent NOE") via Certified Mail [Tracking No. 70151520000166366115] to Nationstar at the Designated Address. *See*, a copy of the Subsequent NOE, attached as **Exhibit 8**.

## DAMAGES INCURRED BY AND IMPACT UPON DeMARTIN

51.     Had FNMA and Nationstar not demanded the payment of impermissible amounts through the Payoffs, it would not have been necessary for DeMartin to forgo her benefit of remaining in the Home at no cost for two (2) months following the sale of the Home.

52.     The improper actions of FNMA and Nationstar further caused DeMartin to suffer from other actual and proximate damages including:

    a.    DeMartin was caused to incur fees and expenses for the costs of approximately one (1) month of temporary lodging in a hotel room—at a more substantial cost than a comparable long-term rental property—while desperately searching for a long-term rental property she could afford and rent despite her credit history being tarnished by the Foreclosure and despite her subsequent payment of and satisfaction of the Loan in full;

    b.    Legal fees and expenses to submit the NOE to Nationstar in a good faith attempt to amicably resolve this matter or to have Nationstar mitigate the harm caused to DeMartin;

    c.    Legal fees and expenses to submit the Subsequent NOE to Nationstar which would not have been necessary but for Nationstar's failure or refusal to respond to the NOE; and,

    d.    Severe emotional distress in addition to the distress caused by Foreclosure caused by having to vacate the Home approximately fifty (50) days earlier than planned causing significant panic and distress as DeMartin had no property into which to relocate at that time. DeMartin's stress was exacerbated because of extreme discomfort from having to delay hip

replacement surgery scheduled during the two (2) months post-closing period during which DeMartin was originally to remain in her Home due to her having to move and relocate on such short notice. Moreover, DeMartin suffers from two (2) autoimmune diseases which put her at greater risks of complications of COVID-19 which caused her great anxiety in having to reside in a hotel room during the current pandemic which would have otherwise been avoided. As a result of the actions of FNMA and Nationstar, DeMartin has suffered frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

**PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY Nationstar**

53.     Nationstar's actions are part of a pattern and practice of behavior in violation of DeMartin's rights and in abdication and contravention of Nationstar's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

54.     As of the filing of this Complaint, consumers nationwide have lodged Six Thousand Seven Hundred Thirty-Nine (6,739) complaints with the CFPB against Nationstar, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan, servicing, payments, escrow" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at: http://www.consumerfinance.gov/data-reseraach/consumer-complaints.

55.     As of the filing of this Complaint, consumers nationwide have lodged Five Hundred Four (504) complaints with the CFPB against Nationstar, specifically concerning the issue identified on the CFPB's consumer complaint database as "settlement process and costs" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online

database which can be accessed at: http://www.consumerfinance.gov/data-research/consumer-complaints.

56. As of the filing of this Complaint, consumers nationwide have lodged Seven Thousand Three Hundred Fifty One (7,351) complaints with the CFPB against Nationstar, specifically concerning the issue identified on the CFPB's consumer complaint database as "on modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at: http://www.consumerfinance.gov/data-research/consumer-complaints/.

57. DeMartin has reviewed the CFPB's consumer complaint database and has identified other similar alleged RESPA violations by Nationstar against other borrowers. In particular, DeMartin has reviewed the fifteen (15) consumer complaints attached hereto and identified as **Group Exhibit 9**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that Nationstar has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

## COUNT I: AGAINST FNMA
### VIOLATIONS OF 15 U.S.C. § 1639g AND 12 C.F.R. § 1026.36(c)(3)

58. DeMartin repeats and realleges paragraphs 1 through 57 with the same force and effect as though fully set forth herein.

59. DeMartin submitted a request for a payoff statement of the Loan pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) on at least three (3) separate occasions in or around July 2020 and September 2020.

60. In response to DeMartin's requests for payoff statements FNMA—or Nationstar acting on behalf of FNMA—failed to provide accurate payoff statements on at least three (3) separate occasions—as required by 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3)—because

the payoff balances stated through each of the Payoffs included impermissible attorneys' fees. *See*, Exhibits 2, 3, 4, and 5.

61.     DeMartin was harmed as a result of the actions of FNMA—or Nationstar acting on behalf of FNMA—as further discussed *supra*, including, but not limited to, legal fees and costs incurred with sending the NOE and the Subsequent NOE which would not have been necessary but for FNMA's and Nationstar's failure to provide accurate payoff statements.

62.     FNMA is vicariously liable for violations of 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) committed by its servicers as alleged in this matter. *E.g.*, *Kolano*, 2014 WL 1117862 at *6; *see also*, *supra*.

63.     As a result of the actions of FNMA and Nationstar—acting on behalf of FNMA— FNMA is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees. 15 U.S.C. §§ 1640(a)(1)-(3); 15 U.S.C. § 1641.

## **COUNT TWO: AGAINST NATIONSTAR**
## **VIOLATION OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. §§ 2605(e) AND (k)**

### **(Failure to timely and properly respond to the NOE)**

64.     DeMartin repeats and realleges paragraphs 1 through 57 with the same force and effect as though fully set forth herein.

65.     "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

66.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

67. A servicer must respond to a notice of error by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i); *see also* 12 U.S.C. § 2605(e)(2)(B).

68. A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

(A) Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

(B) Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

(C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

69. "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

70.     A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

71.     The NOE constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, Exhibit 6.

72.     DeMartin sent the NOE to Nationstar at the Designated Address and Nationstar received each such notice at such address. *See*, id.

73.     Through the NOE, DeMartin alleged that Nationstar failed to provide accurate payoff statements in violation of 12 C.F.R. § 1026.36(c)(3), which is a covered error under 12 C.F.R. § 1024.35(b)(6), on at least two (2) separate occasions through the issuance of each of the Payoffs. *See,* Exhibit 6.

74.     Nationstar failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e) as Nationstar has wholly failed to respond to the NOE.

75.     Nationstar's failure to perform a reasonable investigation into and otherwise properly respond to the errors alleged through the NOE constitute a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and, as a result, DeMartin has suffered actual damages as detailed, *supra*, including, but not limited to incurring legal fees and expenses for preparing and sending the Subsequent NOE which would not have been necessary but for Nationstar's failure to properly respond to the NOE.

76.     Nationstar's actions are part of a pattern and practice of behavior in conscious disregard for DeMartin's' rights.

77.     Nationstar's conduct as pled, *supra*, shows a conscious disregard for DeMartin's rights.

78.     As a result of Nationstar's actions, Nationstar is liable to DeMartin for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

79.     Additionally, DeMartin requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT THREE: AGAINST NATIONSTAR
### VIOLATIONS OF THE RMLA, R.C. 1322.01, *et seq.*

80.     DeMartin repeats and realleges paragraphs 1 through 57 with the same force and effect as though fully set forth herein.

81.     "No person ... shall act as a … mortgage servicer … without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a … mortgage servicer ... in this state." R.C. 1322.07(A).

82.     Nationstar, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

83.     Nationstar is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, License Nos. 850005.009-BR,      RM.850005.014-BR,      RM.850005.016-BR,      RM.850005.012-BR, RM.850005.006-BR, RM.850005.014-BR, and RM.850005.016-BR. R.C. 1322.01(GG).

84.     DeMartin is a buyer, as the Loan is serviced by Nationstar, a mortgage servicer. R.C. 1322.01(H).

85.     A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.* cannot "[e]ngage in conduct that constitutes improper, fraudulent, or dishonest dealings." R.C. 1322.40(C).

86.     Nationstar's conduct in improperly demanding and collecting amounts due through each of the Payoffs, in sending inaccurate payoff statements, and in failing to timely correct the errors asserted by the NOE constitutes violations of R.C. 1322.40(C).

87.     Nationstar's conduct caused DeMartin to suffer actual damages, as further described, *supra*.

88.     As a result of Nationstar's conduct, Nationstar is liable to DeMartin for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52.

89.     A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, is required to comply with all duties imposed by other statutes or common law and:

    (3)     Act with reasonable skill, care, and diligence; [and]
    (4)     Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan[.]

R.C. 1322.45(A).

90.     A registrant, licensee, or person required to be registered or licensed under R.C. 1322 cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

91.     Nationstar's conduct in improperly demanding and collecting amounts due through each of the Payoffs, in sending inaccurate payoff statements, and in failing to timely correct the errors asserted by the NOE constitutes violations of R.C. 1322.45(A)(3)-(4).

92.     As a result of Nationstar's conduct, Nationstar is liable to DeMartin for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.45(D).

## COUNT FOUR: AGAINST FNMA AND NATIONSTAR
### UNJUST ENRICHMENT

93.     DeMartin repeats and realleges paragraphs 1 through 57 with the same force and effect as though fully set forth herein.

94.     DeMartin conferred a benefit—the amounts impermissibly claimed due and owing for attorneys' fees through each of the Payoffs in exchange for her forgoing the benefit of staying in the Home for an additional two (2) months post-closing—upon Nationstar and FNMA, each of which had knowledge of that benefit. *See*, Exhibits 2, 3, 4 and 6.

95.     FNMA and Nationstar voluntarily accepted and retained the benefit conferred.

96.     The circumstances render FNMA's and Nationstar's retention of said benefit inequitable as they were not entitled to the payment of such benefit under Ohio law.

97.     Defendants have been unjustly enriched at the direct expense of DeMartin in the amount of impermissible attorneys' fees paid through the payment, in full, of the amounts demanded through the Payoffs. *See*, Exhibits 2, 3, 4 and 6.

98.     As a result of FNMA's and Nationstar's unjust enrichment, FNMA and Nationstar are each liable to DeMartin for actual damages as further described, *supra*, including disgorgement of all monies unlawfully accepted from Plaintiff.

## COUNT FIVE: AGAINST FNMA AND NATIONSTAR
### BREACH OF CONTRACT

99.     DeMartin repeats and realleges paragraphs 1 through 57 with the same force and effect as though fully set forth herein.

100.    The Loan is a contract between DeMartin and FNMA and Nationstar. *See*, Exhibit 1.

101.    FNMA and Nationstar breached the Contract by demanding, collecting, and accepting amounts in the payoff and satisfaction of the Loan which are impermissible under Ohio Law.

102.    FNMA and Nationstar breached the contract in bad faith as evidenced by their failures to correct its breach despite being put on notice of the same through the NOE and DeMartin's repeated prior communications. *See*, Exhibit 6.

103.    DeMartin has been harmed by FNMA's and Nationstar's breach of the Loan and has suffered actual damages as further pleaded, *supra*.

104.    As a result of their actions, FNMA and Nationstar are each liable to DeMartin for actual damages as further alleged, *supra*, as well as reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Joan DeMartin prays that this Court grant judgment against Defendants Nationstar Mortgage LLC d.b.a. Mr. Cooper and Federal National Mortgage Association, and award her the following:

A.    Actual damages from Defendant Federal National Mortgage Association in an amount to be determined at trial for the allegations contained in Count One.

B.    Actual damages from Defendant Nationstar Mortgage LLC d.b.a. Mr. Cooper in an amount to be determined at trial for the allegations contained in Counts Two and Three.

C.    Actual damages from Defendants Nationstar Mortgage LLC d.b.a. Mr. Cooper and Federal National Mortgage Association in an amount to be determined at trial for

the allegations contained in Counts Four and Five;

D.     An award of statutory damages of Four Thousand Dollars ($4,000.00) from Defendant Federal National Mortgage Association for the violations of TILA and Regulation Z contained in Count One;

E.     An award of statutory damages of Two Thousand Dollars ($2,000.00) for the violation of RESPA contained in Count Two;

F.     For punitive damages against Defendant Nationstar Mortgage LLC d.b.a. Mr. Cooper as to Count Three;

G.     For attorney's fees and costs as to Counts One through Five;

H.     For such other relief which this Court may deem appropriate.

Respectfully submitted,

*/s/Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith Jr. (0097147)
Dann Law
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Counsel for Plaintiff Joan DeMartin*

## JURY DEMAND

Plaintiff Joan DeMartin hereby respectfully demands a trial by jury on all such claims that may be so tried.

*/s/Marc E. Dann*
Marc E. Dann (0039425)
Dann Law

*Joan DeMartin v. Nationstar Mtg., etc.*, et al.
Complaint for Damages: Page 22